UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.  ) | |
| ) | Docket No. 1:21-cr-10095-RGS |
| ) | |
| SHANE SPIERDOWIS, ) | |
| ) | |
| Defendant ) | |
| ) | |

**UNITED STATES' SENTENCING MEMORANDUM**

The United States hereby states that it intends to recommend a sentence to include 27 months of imprisonment, which is within the expected guideline sentencing range. Such a sentence is appropriate in light of factors including Defendant's criminal history, his repeated demonstration of disrespect for the law, his high risk of recidivism, and the brazenness of the crime. The United States further intends to recommend 24 months of supervised release.

**I.    Background**

On October 21, 2021, Shane Spierdowis pleaded guilty to one count of Wire Fraud in violation of 18 U.S.C. § 1343. The Defendant used multiple shell corporations to fraudulently obtain a U.S. Small Business Administration ("SBA") Paycheck Protection Program ("PPP") loan and an SBA Economic Injury Disaster loan ("EIDL"). *See* Presentence Investigative Report ("PSR") ¶¶ 8, 10-16, 18-20. The process for obtaining these loans required numerous instances of deception. The Defendant misrepresented his Social Security number ("SSN") to open bank accounts for his shell companies. *Id.* ¶¶ 9, 17. He similarly misrepresented his SSN in loan applications and submitted forged bank records and IRS filings in support of these applications. *Id.* ¶¶ 10-14, 18,20. He also attested to yearly revenue that did not exist. *Id.* ¶¶ 14, 19. In connection with these two fraudulent loan applications, the SBA disbursed more than $190,000. *Id.* ¶¶ 16, 21.

The Defendant brazenly lied to his bank in an effort to obtain access to these funds. *Id.* ¶¶ 22-26. After deducing that his bank may have notified law enforcement about his fraud, the Defendant proposed fleeing the country or kidnapping and threatening a bank employee. *Id.* ¶¶ 27-29. Even at this point, the Defendant still planned to submit additional fraudulent applications. *Id.* ¶ 31.

**II.     Discussion**

The Sentencing Guidelines are no longer mandatory, though sentencing courts "must consult these Guidelines and take them into account when sentencing." *United States v. Booker*, 543 U.S. 220, 264 (2005). The Sentencing Guidelines are "the 'starting point and the initial benchmark.'" *Kimbrough v. United States*, 552 U.S. 85, 108 (2007) (quoting *Gall v. United States*, 552 U.S. 38, 49 (2007) (noting that the Guidelines should "be kept in mind throughout the process"). The sentencing court must conduct a two-step process: first calculating the sentence using the advisory Sentencing Guidelines, and then applying an individualized assessment under the statutory sentencing factors set forth in 18 U.S.C. § 3553(a). *United States v. Vázquez*, 724 F.3d 15, 28–29 (1st Cir. 2013). These factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant . . .
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct

18 U.S.C. § 3553(a).

As set forth in the PSR, the applicable Guideline Sentence Range in this case is 24 to 30 months. The United States recommends that the Court sentence the Defendant to a sentence of 27 months imprisonment, at the midpoint of this range. In large part, this recommendation is motivated by the Defendant's recent history in federal court, which demonstrates a profound disrespect for the law. Since the Defendant's 2018 arrest in Florida on a charge of conspiracy to commit securities fraud, and the subsequent "huge break" that he was afforded, he has had numerous opportunities to demonstrate a willingness and ability to change his behavior and comply with the law. Yet, the Defendant has chosen to shirk the law each and every time, and to squander each and any break he was given. The pertinent chronology includes the following:

- In October 2018, the U.S. District Court for the Southern District of Florida sentenced the Defendant to probation on a charge of securities fraud. *See* Case 1:18-cr-20355, Docket 23. The Court subsequently described this as "a huge break." *See* Exhibit A (Annotated transcript, May 28, 2019, Case 1:18-cr-20355), p 7. *See also id.* at p.9 ("I have him a very big break").[1]

- Subsequently, the Defendant tested positive for cocaine, arising from an apparent all-night "cocaine and strippers" binge just prior to his sentencing – but the Court gave him another break and did not violate him. *See* Exhibit B (Annotated transcript, March 13, 2019, Case 1:18-cr-20355), pp. 3-4.

- Thereafter, the Defendant engaged in a "pattern of conduct" that resulted in a series of probation violations, including false statements regarding his whereabouts and repeated "nastiness," "belligerence," and disrespect towards U.S. Probation ("USPO"). *Id*, pp., 4-5, 7. USPO indicated that it lacked the resources to supervise the Defendant given his behavior. *Id*. At p. 6. The U.S. Magistrate Judge found that the Defendant had been lying to USPO and had committed repeated violations, and that he was "not likely to obey any order" of the Court. *Id.*, p. 13-14.

- The Defendant subsequently submitted a letter to the Court pledging his intention that this be his "last experience with the court system." *See* Exhibit C (Case 1:18-cr-20355, Docket 44-1). The Defendant contrasted himself with criminals who do not care who they hurt, emphasizing "I DO CARE." *Id.*

- The Defendant also gave the Court his word that he would not commit any further violations. Exhibit A, p. 7. With shrewdness and wisdom, the U.S. District Court found

---

[1] Defendant's guideline sentencing range was 18 – 24 months, and the United States requested a sentence of 17 months. *See id.* at p. 3.

that there was "absolutely no reason to believe" the Defendant's protestations that he was a changed man. *Id.* p. 8. The Court noted that the Defendant had violated his terms of probation "time and time and time and time again," and revoked this probation. *Id.*, p. 9.

The Defendant then remained in custody until late June 2020, and he had only been released a short time before committing the instant offense. This underscores the emptiness of the Defendant's promises and his unwillingness to reform himself. The Defendant does not deserve another "big break," but instead must face appropriate consequences for his misconduct in this case specifically and for his pattern of misconduct generally.

### III.   Conclusion

The seriousness and sophistication of the Defendant's conduct, combined with his history of contempt for the law, merits a sentence that includes a term of imprisonment of 27 months.

Respectfully submitted,

RACHAEL S. ROLLINS
UNITED STATES ATTORNEY

By: */s/   William F. Abely*
WILLIAM F. ABELY
Assistant U.S. Attorney
William.abely@usdoj.gov

Date: February 18, 2022

## **CERTIFICATE OF SERVICE**

      I hereby certify that this document will be filed via ECF and thereby transmitted to all counsel of record; a copy will also be sent via email to United States Probation.

                                                 */s/   William F. Abely*
                                                 WILLIAM F. ABELY
                                                 Assistant U.S. Attorney

Date: February 18, 2022